# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COUNCIL OF PARENT ATTORNEYS AND ADVOCATES, INC. | Civil No. 18-CV-01636-TSC |
| Plaintiff, | |
| v. | |
| ELIZABETH (BETSY) DEVOS, SECRETARY OF EDUCATION; JOHNNY W. COLLET, ASSISTANT SECRETARY FOR SPECIAL EDUCATION AND REHABILITATIVE SERVICES; U.S. DEPARTMENT OF EDUCATION, | |
| Defendants | |

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................2

LEGAL STANDARD..............................................................................................................4

ARGUMENT...........................................................................................................................4

    I.     Plaintiff's motion for fees is timely filed. ...........................................................4

    II.    Plaintiff is the prevailing party. .........................................................................6

    III.   Defendant's position in this litigation was not substantially justified. ..............8

    IV.   The requested award is reasonable. ..................................................................10

CONCLUSION......................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**                                                                                             **Pages**

*Air Transp. Ass'n of Can. v. FAA*,
  156 F.3d 1329 (D.C. Cir. 1998) ........................................................................................ 9

*Am. Wrecking Corp. v. Sec'y of Labor*,
  364 F.3d 321 (D.C. Cir. 2004) ........................................................................................ 11

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*,
  532 U.S. 598 (2001) .......................................................................................................... 6

*Cactus Canyon Quarries, Inc. v. Fed. Mine Safety & Health Review Comm'n*,
  820 F.3d 12 (D.C. Cir. 2016) ............................................................................................ 6

*Council of Parent Attorneys & Advocates, Inc. v. DeVos*,
  365 F. Supp. 3d 28, 37 (D.D.C.), *appeal voluntarily dismissed*, No. 19-5137,
  2019 WL 4565514 (D.C. Cir. 2019) ......................................................................... passim

*Hatfield v. Hayes*,
  877 F.2d 717 (8th Cir. 1989) ............................................................................................ 9

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ........................................................................................................ 10

*Hirschey v. FERC*,
  760 F.2d 305 (D.C. Cir. 1985) .......................................................................................... 8

*Impresa Construzioni Geom. Domenico Garufi v. United States*,
  531 F.3d 1367 (Fed. Cir. 2008) ........................................................................................ 5

*Lake Pilots Ass'n, Inc. v. U.S. Coast Guard*,
  310 F. Supp. 2d 333 (D.D.C. 2004) .................................................................................. 7

*Lundin v. Mecham*,
  980 F.2d 1450 (D.C. Cir. 1992) .................................................................................... 7, 8

*Mazloum v. District of Columbia*,
  654 F. Supp. 2d 1 (D.D.C. 2009) .................................................................................... 11

*Melkonyan v. Sullivan*,
  501 U.S. 89 (1991) ............................................................................................................ 4

*NAACP v. Donovan*,
  554 F. Supp. 715 (D.D.C. 1982) ..................................................................................... 11

*Pierce v. Underwood*,
    487 U.S. 552 (1988)...............................................................................................................8

*Richlin Sec. Serv. Co. v. Chertoff*,
    553 U.S. 571 (2008).............................................................................................................11

*Role Models Am., Inc. v. Brownlee*,
    353 F.3d 962 (D.C. Cir. 2004)........................................................................................10, 12

*Scarborough v. Principi*,
    541 U.S. 401 (2004)...............................................................................................................5

*SecurityPoint Holdings, Inc. v. TSA*,
    836 F.3d 32 (D.C. Cir. 2016)...............................................................................................10

*Select Milk Producers, Inc. v. Johanns*,
    400 F.3d 939 (D.C. Cir. 2005)...............................................................................................6

*Taucher v. Rainer*,
    237 F. Supp. 2d 7 (D.D.C. 2002)...........................................................................................9

*Turner v. Nat'l Transp. Safety Bd.*,
    608 F.3d 12 (D.C. Cir. 2010).................................................................................................6

*Vasquez v. Barnhart*,
    459 F. Supp. 2d 835 (N.D. Iowa 2006)..................................................................................5

*Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*,
    202 F. Supp. 3d 20 (D.D.C. 2016).........................................................................................4

*Yazdani v. Access ATM*,
    474 F. Supp. 2d 134 (D.D.C. 2007).....................................................................................11

**Statutes**

Equal Access to Justice Act, 28 U.S.C. § 2412 ........................................................................1, 4

28 U.S.C. § 2412(d)(1)(A).............................................................................................................8

28 U.S.C. § 2412(d)(1)(B).........................................................................................................4, 5

28 U.S.C. § 2412(d)(2)(A)...........................................................................................................10

28 U.S.C. § 2412(d)(2)(B).............................................................................................................7

**Scholarly Authority**

Gregory C. Sisk, *The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct (Part Two)*, 56 La. L. Rev. 1 (1995) ................................................................................................................5

**Other Authorities**

*Laffey Matrix*, http://www.laffeymatrix.com/see.html (last visited Oct. 17, 2019) .......................11

U.S. Attorney's Office for D.C., *USAO Attorney's Fees Matrix — 2015-2019*, https://www.justice.gov/usao-dc/file/796471/download ..........................................................11

**INTRODUCTION**

Council of Parent Attorneys and Advocates (hereinafter "Plaintiff"), through undersigned counsel, hereby respectfully requests this Court to award it reasonable fees and costs in this matter. Plaintiff is a "national not for-profit organization of parents of children with disabilities, their attorneys, and their advocates," whose mission is "to protect and enforce the legal and civil rights of students with disabilities and their families." *Council of Parent Attorneys & Advocates, Inc. v. DeVos*, 365 F. Supp. 3d 28, 37 (D.D.C.), *appeal voluntarily dismissed*, No. 19-5137, 2019 WL 4565514 (D.C. Cir. 2019). Plaintiff filed this lawsuit in July 2018 to vacate the Department of Education's "Delay Regulation" that postponed state compliance with the recently amended regulations for the Individuals with Disabilities Education Act. Under the amended regulations, states would adopt a standard methodology to identify and address significant racial disproportionality in the identification, placement, and/or discipline of students in special education programs. This Court granted Plaintiff's motion for summary judgment, finding that the "Delay Regulation" had no reasoned explanation and was arbitrary and capricious. The "Delay Regulation" was vacated, and Plaintiff therefore secured meaningful relief for itself, its members, and the affected students and families whose rights Plaintiff works to vindicate. Having prevailed, and for the reasons described below, Plaintiff is entitled to fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.

This motion is a "skeletal" motion filed pursuant to the Court's October 16, 2019, order permitting Plaintiff to pursue the "skeletal" approach pending the parties' ongoing efforts to settle the fee-and-costs issue. Should a settlement not be reached, the parties will jointly move to return this case to the active docket, and Plaintiff will alter, supplement, and/or amend this motion.

**BACKGROUND**

The Individuals with Disabilities Education Act ("IDEA") requires states to collect and examine data to determine if there is a significant disproportionality based on race that occurs in the "identification and placement" and the "incidence, duration, and type of disciplinary actions" for students with disabilities. *Council of Parent Attorneys & Advocates, Inc.*, 365 F. Supp. 3d at 33 (quoting Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, § 618(c), 118 Stat. 2647, 2739). If a school district has a "significant disproportionality in any of these respects," the state must review and revise the "policies, procedures, and practices used in such identification or placement." *Id.* at 34 (quoting § 618(d)(2)(A)). Plus, the state must "require school districts to spend 15% of their federal IDEA money 'to provide comprehensive coordinated early intervening services to serve children . . . that were significantly overidentified.'" *Id.* (quoting § 618(d)(2)(B)).

In 2014, the Government Accountability Office ("GAO") reported that some states were defining "overrepresentation" in a manner that "made it unlikely that *any* districts would be identified." *Id.* (emphasis added) (citing U.S. Gov't Accountability Office, GAO-13-137, Individuals with Disabilities Education Act: Standards Needed to Improve Identification of Racial and Ethnic Overrepresentation in Special Education (2013), https://www.gao.gov/products/GAO-13-137 (hereinafter GAO Report No. 13-137)). The GAO therefore recommended a standardized approach that all states could use for defining "significant disproportionality." *Id.* (citing GAO Report No. 13-137). This standardized approach was memorialized in 2016 amended IDEA regulations, which established "common parameters for analysis, which each State must use to determine whether significant disproportionality is occurring at the State and local level." *Id.* at 35 (quoting Final Regulations Regarding

Assistance to States for the Education of Children With Disabilities; Preschool Grants for Children With Disabilities, 81 Fed. Reg. 92,376, 92,391 (Dec. 19, 2016)).  The 2016 regulations required states to use "risk ratios" to analyze disparities across several racial and ethnic groups, and if the risk ratio for a particular group exceeds a certain threshold, then the school district "may be identified as significantly disproportionate." *Id.* at 35-36 (citing 34 C.F.R. § 300.647(b)(6)).

The Department of Education set July 1, 2018, as the compliance date for these new regulations.  *Id.* at 36.  This would afford states additional time to implement the regulations and amend any policies and procedures necessary to ensure compliance.  *Id.*  But on July 3, 2018, the Department published a "Delay Regulation" that would postpone state compliance by two years.  *Id.* (citing Final Rule Delaying Compliance Date Regarding Assistance to States for the Education of Children With Disabilities; Preschool Grants for Children With Disabilities, 83 Fed. Reg. 31,306, 31,308 (July 3, 2018)).

Plaintiff swiftly responded by filing suit on July 12, 2018, requesting that this Court enjoin the Department, Secretary of Education Elizabeth (Betsy) DeVos, and Assistant Secretary for Special Education and Rehabilitative Services Johnny W. Collet (collectively, "Defendants") from implementing the Delay Regulation, and vacate and set aside the Delay Regulation.  *Id.* at 37.  Plaintiff also sought a declaration from this Court that the Delay Regulation was unlawful.  *Id.*  Defendants moved to dismiss this case for lack of standing, and both parties filed cross-motions for summary judgment.  *Id.* at 38.

This Court made the following rulings: (1) Plaintiff had organizational standing to challenge the Delay Regulation; (2) Plaintiff had associational standing to challenge the Delay Regulation; (3) the Department failed to provide a reasoned explanation for implementing the

3

Delay Regulation; (4) the Department failed to consider the costs of implementing the Delay Regulation, which was arbitrary and capricious; and (5) vacatur of the Delay Regulation was the appropriate remedy. *Id.* at 39-56. This Court therefore denied Defendants' motion to dismiss, denied Defendants' cross-motion for summary judgment, and granted Plaintiff's motion for summary judgment. *Id.* at 56.

## LEGAL STANDARD

To demonstrate entitlement to a fee award under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, "a party seeking a fee award must submit an application showing (1) that it is a prevailing party, (2) its statutory eligibility to receive an award, and (3) the amount sought, including an itemized statement breaking down that claim for reimbursement." *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 202 F. Supp. 3d 20, 24 (D.D.C. 2016) (citing 28 U.S.C. § 2412(d)(1)(B)). The moving party must also "allege that the position of the United States was not substantially justified." *Id.* (quoting 28 U.S.C. § 2412(d)(1)(B)). Then, the burden of establishing that the government's position was substantially justified "must be shouldered by the Government." *Id.* (quoting *Scarborough v. Principi*, 541 U.S. 401, 414 (2004)).

## ARGUMENT

I.  **Plaintiff's motion for fees is timely filed.**

The EAJA provides that an application for fees and costs "shall" be filed within "thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B); *see Melkonyan v. Sullivan*, 501

U.S. 89, 95 (1991).[1]  If an agency appeals a judgment, "the 30-day statute of limitations does not begin to run until the appellate proceedings are concluded[2] or, when the appeal ends with a remand for further action by the district court, a final disposition of the merits occurs and no further review of the decision is available."  Gregory C. Sisk, *The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct (Part Two)*, 56 La. L. Rev. 1, 177 (1995).

Following this Court's opinion and judgment, Defendants timely appealed to the D.C. Circuit.  (ECF No. 34.)  On September 18, 2019, the D.C. Circuit granted Defendants' motion to voluntarily dismiss their appeal.  (ECF No. 36-1.)  Thus, Plaintiff's request for attorneys' fees and costs pursuant to the EAJA would be due on or before either October 18, 2019, or January 16, 2020.  *See* 28 U.S.C. § 2412(d)(1)(B); *see also* note 2, *supra*.  In an abundance of caution, Plaintiff treated its deadline as October 18, 2019.  But because the parties are interested in

---

[1] In *Scarborough v. Principi*, 541 U.S. 401, 413-14 (2004), the Supreme Court clarified that the EAJA's statute of limitations does not create a "jurisdictional" deadline.  Accordingly, courts have found that the government may waive it.  *See, e.g., Vasquez v. Barnhart*, 459 F. Supp. 2d 835, 836-37 (N.D. Iowa 2006) (court entered fee award where, despite the plaintiff's tardy filing, the government stated that it did not object to the motion's timing and asked the court to enter the fee award for the amount requested).

Rather than waive or stipulate to an extension of the EAJA's 30-day deadline here, counsel for Defendants proposed the skeletal-motion approach taken here and graciously provided Plaintiff with samples of past filings effectuating that approach.

[2] After surveying other circuits' law, the Federal Circuit has concluded that appellate proceedings are not concluded for purposes of EAJA's statute of limitations until the 90 days in which a party may petition for a writ of certiorari has run and that is so even in a case, like this one, in which the party taking the appeal to the court of appeals voluntarily dismisses its appeal. *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 531 F.3d 1367, 1371-72 (Fed. Cir. 2008).  This Court, however, need not opine on whether the Federal Circuit's rule is correct at this juncture because the approach embodied in this motion would moot that issue.

pursuing the possibility of settling the fees-and-costs issue in this case and have begun to engage in settlement discussions, Plaintiff asked the Court for permission to file this skeletal motion for fees and costs with leave to alter, amend, and/or supplement in the event that the parties are unable to reach a settlement.  (ECF No. 37.)  On October 16, 2019, the Court granted that motion.

## II.     Plaintiff is the prevailing party.

A "prevailing party" is one who achieves a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001).[3]  A three-part test determines when a movant qualifies for "prevailing party" status: "(1) there must be a court-ordered change in the legal relationship of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." *Turner v. Nat'l Transp. Safety Bd.*, 608 F.3d 12, 15 (D.C. Cir. 2010) (internal quotation marks omitted) (quoting *District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010)).

Plaintiff satisfies these requirements.  This Court granted Plaintiff's motion for summary judgment, thereby indisputably resolving the litigation in Plaintiff's favor.  Plus, this Court's ruling was accompanied by clear judicial relief in Plaintiff's favor: vacatur of the Delay Regulation.  This changed the parties' legal relationship by "block[ing] enforcement of the new regulation that had been promulgated by [the Department of Education]." *Select Milk Producers,*

---

[3] The D.C. Circuit has applied *Buckhannon*'s interpretation of "prevailing party" in EAJA cases.  *See Cactus Canyon Quarries, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 820 F.3d 12, 14 (D.C. Cir. 2016).

*Inc. v. Johanns*, 400 F.3d 939, 947 (D.C. Cir. 2005) (affirming district court's determination that milk marketing cooperatives were prevailing parties under the EAJA). Plus, vacatur of the Delay Regulation is the exact relief Plaintiff sought, which further supports a finding that Plaintiff is the prevailing party under the EAJA. *See Lake Pilots Ass'n, Inc. v. U.S. Coast Guard*, 310 F. Supp. 2d 333, 336 (D.D.C. 2004) (describing a D.C. Circuit decision holding that the movant "was a prevailing party under the EAJA because it had received the precise relief it sought").

In addition, Plaintiff meets the qualifications set forth in 28 U.S.C. § 2412(d)(2)(B), which requires that a "party" organization or association for purposes of the EAJA must have a "net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B). Council of Parent Attorneys and Advocates, Inc. is a non-profit 501(c)(3) organization. *See* Decl. of Selene Almazan at ¶ 3. It had a net worth of less than $7 million and fewer than 500 employees at the time it filed this lawsuit. *Id.* at ¶ 4. It does not owe any debt to the federal government. *Id.* at ¶ 5. And it has assigned payment of any award of fees and costs to Sidley Austin LLP and the National Center for Youth Law. *Id.* at ¶ 6.

Finally, Plaintiff incurred litigation costs while pursuing its claim against Defendants. As described in greater detail below, Plaintiff incurred costs of litigation in pursuing this litigation against Defendants, who are an executive agency and two government officials within the federal government. *See Lundin v. Mecham*, 980 F.2d 1450, 1457 (D.C. Cir. 1992) ("The legislative history of EAJA makes it evident that the statute was intended as a shield for the individual to use against the overwhelming resources of the Federal Government.").

**III.     Defendant's position in this litigation was not substantially justified.**

Because Plaintiff has established that it is the qualified, prevailing party, it is entitled to fees and expenses unless this Court finds that Defendants' position was "substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).  Defendants bear the burden of establishing that one of these exceptions applies. *Hirschey v. FERC*, 760 F.2d 305, 308-09 (D.C. Cir. 1985).  A position can be substantially justified only if it has a "reasonable basis both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 563-66 (1988).  The substantial justification test must be satisfied both by the agency action that led to the litigation and also the positions Defendants asserted while defending those actions in litigation. *See Lundin*, 980 F.2d at 1459 (citing 28 U.S.C. § 2412(d)(2)(D) (1988)).

In vacating the Delay Regulation, this Court found that "[t]he inconsistency in the government's argument only serves to show that there was no need for the delay at all, and it renders the Delay Regulation arbitrary and capricious." *Council of Parent Attorneys & Advocates*, 365 F. Supp. 3d at 52.  This Court also determined that Defendants had presented no reasoned explanation for delaying the 2016 amended IDEA Regulations. *Id.* at 50 ("The government did not explain why it had changed its position that the 2016 safeguards would be effective."); *id.* (the government's position "was contrary to and inconsistent with its prior determination"); *id.* at 51 ("Again, the government here provides no such 'reasoned explanation.'"); *id.* (noting "[t]he insufficiency of the government's explanation for its policy change").

In addition, this Court concluded that Defendants' position was unsupported by the rulemaking record. *Id.* at 48.  And Defendants took positions during the course of the litigation that were unsupported by case law. *Id.* at 51 (finding that "[t]he government's 'concerns'—

8

drenched in qualification—about the possibility of incentivizing racial quotas amount to the type of speculation the Supreme Court and the D.C. Circuit have rejected"); *id*. at 54 ("Tellingly, the government cites no law in support of this proposition.").[4]  Ultimately, this Court found that Defendants' "deficiencies were substantial" and, in denying their request for a remand, that it was "unlikely that the government could justify its decision on remand." *Id.* at 55.

For all of these reasons, this Court's decision makes clear that Defendants had no reasonable basis in either law or fact for its positions taken during this litigation, or for its actions that spurred this litigation in the first place.  And no "special circumstances" justify a denial of attorneys' fees in this case.  Courts have interpreted "special circumstances" as a "directive for courts to apply traditional equitable principles in determining whether a prevailing party should receive a fee award under EAJA." *Air Transp. Ass'n of Can. v. FAA*, 156 F.3d 1329, 1333 (D.C. Cir. 1998) (per curiam) (quotations omitted).  This "narrowly construed" and "rare" exception is not implicated here.  *Taucher v. Rainer*, 237 F. Supp. 2d 7, 15 (D.D.C. 2002).  Courts have routinely refused to apply this exception in a variety of circumstances.  *See, e.g.*, *Hatfield v.*

---

[4] This is true not just with respect to Defendants' defense of the Delay Regulation under the APA, but also with respect to their arguments that Plaintiff lacked standing, which resulted in additional rounds of briefing and drove up the costs of this litigation.  *Council of Parent Attorneys & Advocates*, 365 F. Supp. 3d at 40 ("This trio of cases—*Action Alliance*, *PETA*, and *Waterkeeper*—controls this court's decision" that Plaintiff had demonstrated injury in fact); *id.* at 44 ("The government's argument that COPAA cannot show injury because it did not previously have access to the increased information about significant disproportionality is inconsistent with both *PETA* and *Action Alliance*."); *id.* at 47 (observing that "the Supreme Court rejected" in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982), Defendants' argument that Plaintiff's members had not suffered injury); *id.* ("This argument ignores case law holding that losing the opportunity to review the child's school district is injury enough.").

*Hayes*, 877 F.2d 717, 720 (8th Cir. 1989) (collecting and listing the various circumstances in which courts have regularly rejected the application of the exception).

**IV.    The requested award is reasonable.**

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). The Supreme Court has determined that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." *Id.* at 440; *SecurityPoint Holdings, Inc. v. TSA*, 836 F.3d 32, 40 (D.C. Cir. 2016). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433.

Under the EAJA, attorneys' fees may be awarded at $125 per hour, plus a cost of living adjustment as measured by the Consumer Price Index (CPI). *See* 28 U.S.C. § 2412(d)(2)(A); *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 969 (D.C. Cir. 2004). The cost of living adjustment is "routinely approve[d]." *Role Models*, 353 F.3d at 969 (quoting Sisk, *supra*, at 128). The adjustment EAJA rate under the CPI for the Los Angeles, CA area was $211.35 in 2018 and is $216.31 in 2019. The adjustment EAJA rate under the CPI for the Washington, D.C. area was $206.32 in 2018 and is $208.53 in 2019.[5]

Each of the attorneys involved in this case has a market rate well over the adjusted EAJA rates based on counsel's actual billing rates, which, when available, are the most probative

---

[5] These rates were calculated by multiplying the $125 rate provided when the EAJA was amended in March 1996 by the quotient of the relevant (i.e., 2018 or 2019) CPI-U divided by the March 1996 CPI-U.

evidence of market rates. *See, e.g.*, *Mazloum v. District of Columbia*, 654 F. Supp. 2d 1, 5 (D.D.C. 2009); *Yazdani v. Access ATM*, 474 F. Supp. 2d 134, 138 (D.D.C. 2007). For example, the billing rate of a first-year Sidley Austin associate is $540 per hour. And each of the attorneys involved in this case from the National Center for Youth Law has a market rate well over the adjusted EAJA rates based on the Laffey Matrix, which applies to non-profit organizations and other lawyers who do not have customary billing rates for paying clients. For example, in 2018-2019, a lawyer with two years or less experience may recover $371 under the Laffey Matrix. *See Laffey Matrix*, http://www.laffeymatrix.com/see.html (last visited Oct. 17, 2019). Each of the lawyers involved in this case has considerably more experience than this.

Work done by paralegals and law clerks is also recoverable under the EAJA, and their work is recoverable at the prevailing market rate. *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 577-78 (2008). The prevailing market rate for work done by paralegals and law clerks was at least $166.00 throughout the pendency of this litigation. *See* U.S. Attorney's Office for D.C., *USAO Attorney's Fees Matrix — 2015-2019* (noting $166 rate for paralegals and law clerks between June 1, 2018, and May 31, 2019), https://www.justice.gov/usao-dc/file/796471/download.

In addition to reasonable attorneys' fees, Plaintiff is also entitled to recover costs and expenses incurred during litigation. *See NAACP v. Donovan*, 554 F. Supp. 715, 719 (D.D.C. 1982) (citing 28 U.S.C. § 2412(a) and (d)(1)(A)). "In general, there is a heavy presumption in favor of the award of costs to prevailing parties." *Id.* at 719 n.8 (citing *Sun Ship Inc. v. Lehman*, 655 F.2d 1311 (D.C. Cir. 1981)). Costs associated with the filing of Plaintiff's complaint and other manually filed documents, online research fees, and copying and printing costs are clearly recoverable under the EAJA. *See Am. Wrecking Corp. v. Sec'y of Labor*, 364 F.3d 321, 331

(D.C. Cir. 2004) (per curiam) (awarding prevailing party costs of photocopies and document production, computer research, and filing fees); *Role Models*, 353 F.3d at 975.

    Because the parties are pursuing possible settlement and the Court has permitted this skeletal filing with a later alteration, amendment, and/or supplement if necessary, Plaintiff has not spent the resources needed to provide a detailed analysis and evidence of the fees and costs incurred in this case.  Based on preliminary calculations, however, the lawyers, paralegals, and law clerks at Sidley Austin have spent 1,168.85 hours on this case and incurred $19,864.60 in costs, and the lawyers at the National Center for Youth Law have spent 302.8 hours.

    If settlement is not achieved, Plaintiff will submit detailed contemporaneous time and cost records demonstrating that the amount of time expended and the costs incurred on its case was reasonable.

## CONCLUSION

For the reasons stated above, Plaintiff is the prevailing party and is entitled to compensation under the EAJA for the time and expenses incurred in litigating this case.

Dated:  October 18, 2019  Respectfully submitted,

|  |  |
|---|---|
|  | /s/ *Jennifer J. Clark* |
| Seth Michael Galanter (Bar No. 479919) | Jennifer J. Clark (Bar No. 1003483) |
| NATIONAL CENTER FOR YOUTH LAW | SIDLEY AUSTIN LLP |
| 1313 L St. NW, Suite #130 | 1501 K Street, NW |
| Washington, DC 20005 | Washington, DC 20005 |
| Telephone: (202) 288-8188 | Telephone: (202) 736-8000 |
| Facsimile: (202) 868-4788 | Facsimile: (202) 736-8711 |
| sgalanter@youthlaw.org | jennifer.clark@sidley.com |
|  |  |
| Michael Harris (*admitted pro hac vice*) | Jean-Claude André (*admitted pro hac vice*) |
| NATIONAL CENTER FOR YOUTH LAW | SIDLEY AUSTIN LLP |
| 405 14th St., 15th Floor | 555 West Fifth Street, Suite 400 |
| Oakland, CA 94612 | Los Angeles, CA 90013 |
| Telephone: (510) 835-8098 | Telephone: (213) 896-6000 |
| Facsimile: (410) 835-8099 | Facsimile: (213) 896-6600 |
| mharris@youthlaw.org | jcandre@sidley.com |

Crystal M. Adams
NATIONAL CENTER FOR YOUTH LAW
1313 L St. NW, Suite #130
Washington, DC 20005
Telephone: (202) 868-4785
Facsimile: (202) 868-4788
cadams@youthlaw.org

*Counsel for Plaintiff Council of Parent Attorneys and Advocates, Inc.*